### HENRY CROCKER *vs.* JAMES FOLEY.

An offer in writing, accepted by parol, requires no stamp.

The declaration in an action alleged that the defendant made an agreement with the plain tiff, a copy of which was annexed, whereby the defendant promised that, if the plaintiff would renew a certain note held by him against a company and about to fall due, the defendant would pay the renewed note at maturity. A copy of a letter from the defendant to the plaintiff was annexed, containing this language: "It can do you no good to allow the note to go to protest, as you would then have to take it up. By renewing it for a month or so you will be saved this trouble, and I will promise you that I shall see the renewal note paid at maturity, as I am quite satisfied the company will be in a position to do so." *Held*, that this declaration was supported by proof of the letter, of the plaintiff's renewing the note for three months, and of the defendant's assent thereto.

This court will not revise the finding of the superior court on a question of fact, in a case where trial by jury was waived.

CONTRACT.   The declaration alleged that on the 9th of December 1864 the plaintiff was the owner of a certain promissory note made by the Canada Lead Mining Company, for $3531, payable on the 12th of December; that on said 9th of December the defendant made an agreement with the plaintiff, a copy of which was annexed, whereby the defendant promised that if the plaintiff would renew said note the defendant would pay the renewed note at maturity; that in consideration of said agreement the plaintiff renewed said note by receiving another note of said company for the same amount in place thereof, dated December 9th and payable in three months from date; and due notice of said renewal was given to the defendant, yet, though requested, he refuses to pay said renewed note.

The following letter was annexed to the declaration:

"New York, Dec. 9, 1864.   Henry Crocker, Esq.   Dear Sir I have a letter from Mr. Case about the Canada Lead Co. note due on the 12th inst.   They want to have it carried over for a month or so, that they may get the ore to market and realize upon it.   It can do you no good to allow the note to go to protest, as you would then have to take it up.   By renewing it for a month or so you will be saved this trouble, and I will promise you that I shall see the renewal note paid at maturity, as I am quite satisfied the company will be in a position to do so.   I

therefore trust you will arrange to carry the note over. You may take my word that it will be all right if you do so. Yours truly, James Foley."

The answer denied the making of any agreement to pay the renewed note, or the renewal of the note by the plaintiff in consideration of any such agreement by the defendant, or due notice to him of such renewal.

At the trial in the superior court, before *Russell*, J., without a jury, the plaintiff testified substantially as follows: " I held the original note referred to, with thirty-five hundred shares of the company as collateral security therefor, and some days before its maturity called upon Albert Case, treasurer of the company, and asked if it would be paid when due, and Case said the company had no funds in the treasury, and that it belonged to Foley (who was agent and manager of the company and a large stockholder therein) to pay it; I replied that I must have the money, and should have the note protested if not paid, and Case said he would write to Foley about it, and a day or two afterwards Case read to me a letter from Foley, [which was put in evidence,] urging Case to get the plaintiff to renew the note for two or three months. I still objected to renewing it, and threatened to protest the note and sell the stock, if the note was not paid. On December 10th I found the letter annexed to the declaration upon my table and read it, and on the same day Case called upon me and read a letter from Foley to him, in which he said the letter to me was inclosed, as follows: ' I have yours of yesterday, and am surprised at the way that Mr. Crocker is acting. He can do no good by protesting the note, as he would then have to take it up. It is much better for him to renew it. I enclose a letter to him on the subject. Please read it, seal it, and send it down to him. I think you had better see him soon after, and try to get the note renewed for one or two months. Tell him he must do it. Pay the interest and I will arrange with you.' I told Case I did not wish to renew the note, and insisted upon the money. He urged me to renew it. Afterwards I had several interviews with Case, demanding the money. He urged me to accept Foley's proposition and renew

the note. I replied that the collateral security was then worth something, and might not be in three months; and asked Case about 'Foley's responsibility, and to give me references, which he did, and I made inquiry of them as to the means of Foley. These inquiries necessarily delayed me several days. Finally, I told Case I would accept Foley's proposition, and renew the note for three months, but the interest must be paid ; and Case gave me the new note, ante-dating it, and attaching to it the certificate of stock as collateral security, and I surrendered to him the original note. Case gave me his own note for the interest, which he afterwards paid. I asked him to notify Foley of my acceptance of his proposition; and afterwards called upon him to see if he had heard from Foley, and he showed me a letter from Foley, dated January 4th 1865, saying, ' I have yours of yesterday, and am glad to hear that Crocker has arranged the notes.' I had the original note protested."

The plaintiff also called Case as a witness, who produced the letter above referred to, and also another dated December 12th 1864, to himself, from Foley, saying, " I think Crocker will renew; he would act very foolishly if he did not. What I am looking at is the stock he holds as collateral. If he had not this, we could force him into terms. I hope to hear from you in the morning that it is arranged." Case testified that he read this letter to the plaintiff; that on the renewal he gave a note for the interest, which he afterwards paid from money sent to him by Foley for that purpose ; that Foley also paid at the same time for the stamps put upon the new note ; that he wrote to Foley that Crocker had renewed the note for three months, and received in reply the letter of January 4th.

The defendant objected to the introduction of his letter of December 9th for want of a stamp upon it; but it was admitted.

The defendant offered in evidence the following letter from Case to himself, dated December 28th 1864 :

" I received your note last evening. Called on Crocker. He says the note is beyond his reach. He realized on it, and others own it. I asked to have it accommodated by two notes as you

wished, or by one for thirty days, till the lead could arrive and be sold. Said he could do nothing about it. He took measures to ascertain from respectable sources that the note would be paid at maturity; that himself and another had indorsed it. He had received the money and would not ask for accommodation. I told him, as before, we depended on selling the ore, but the delay in getting it down prevented. No use, he said. So I left him. Tremont Bank, 9th, 12th, $3531."

The bill of exceptions did not state anything further in relation to this letter than that it was offered in evidence; or that there was any evidence to show the truth of its contents.

The defendant contended that the evidence failed to prove any such agreement by him as alleged; that the alleged agreement declared on was at most an offer of guaranty, which could only be binding if accepted within a reasonable time and in conformity to its terms, and that the evidence did not warrant the inference of such acceptance, but showed an absolute rejection of the offer of guaranty, whereby the offer became void; and that the renewal of the note was made after such rejection, and there was no evidence to show that the offer had ever been renewed by the defendant.

But the judge admitted the letter, and found that thereby the defendant offered that, if the plaintiff would renew the note, he would pay such renewed note at maturity; that this offer, while in force, was accepted within a reasonable time by the plaintiff according to its terms, and the renewal was accordingly made; that due notice was given to the defendant, through his agent Case; and that the defendant refused to pay the renewed note. And the judge accordingly found for the plaintiff; and the defendant alleged exceptions.

*J. M. Keith,* for the defendant. The letter was inadmissible for want of a stamp. U. S. St. of 1864, *c.* 173, §§ 151, 163. If admissible, it did not amount to an agreement, but only to an argument for the renewal of the note. There was no present offer of guaranty. And it was never accepted according to its terms. Those terms were, to renew for a month or so. A renewal for three months was more hazardous to the defendant.

The offer was made with a view to prevent the original note from being protested. But by protesting that note the plaintiff destroyed the consideration of the offer.

The evidence shows a rejection by the plaintiff of the defendant's offer. This appears from Case's letter of December 28th. The defendant's offer having been once rejected, he cannot be held upon it. No other offer is declared upon.

*C. P. Judd*, for the plaintiff. An offer in writing, accepted by parol, requires no stamp. 3 Parsons on Con. 295. *Beeching* v. *Westbrook*, 8 M. & W. 411. *Vollans* v. *Fletcher*, 1 Exch. 20. *Vaughton* v. *Brine*, 1 Man. & Gr. 359. *Hudspeth* v. *Yarnold*, 19 Law Journ. (N. S.) C. P. 321. A copy of the defendant's letter being annexed to the declaration, he was fully informed of the ground of claim against him, and calling his proposal an agreement is not incorrect. See *Hunt* v. *Adams*, 5 Mass. 361 ; *Boston & Maine Railroad* v. *Bartlett*, 3 Cush. 224. The defendant's proposal was duly accepted. *Mactier* v. *Frith*, 6 Wend. 103. He was notified by his agent ; and he may be presumed to have known what his agent knew. *Wright* v. *Bigg*, 15 Beav. 592.

BIGELOW, C. J. 1. The objection that the letter was inadmissible as evidence in proof of an agreement by the defendant is untenable. By U. S. St. 1864, *c.* 173, §§ 151, 163, which was in force when the letter was written, it is required only that contracts or agreements shall bear a stamp such as is therein designated. By this is intended contracts which are completed by the assent of the parties thereto. The letter in question is not a contract or agreement of itself. It was only a proposition or offer. No contract or agreement was entered into between the parties until the plaintiff had signified his assent thereto to the defendant's agent, and had renewed the note in compliance with the defendant's offer. The contract of guaranty took effect from this verbal acceptance of the offer in the letter, and the acts of the plaintiff in pursuance thereof. The letter was only one link in the chain of evidence tending to prove the contract. No stamp was required to render it admissible for such purpose. See cases cited in 3 Parsons on Con. 295. But if a stamp was

required, the omission to affix it would not render the letter invalid or inadmissible as evidence of a contract. There was nothing to show that the omission was intentional or fraudulent. *Tobey* v. *Chipman, ante,* 123.

2. There was no substantial variance between the allegations in the declaration and the evidence at the trial. An accurate copy of the letter was annexed to the declaration, and the aver ment is that the plaintiff in compliance with the promise therein contained did the acts which constituted a good consideration for the promise, and rendered it obligatory upon the defendant.

3. We cannot say that the finding of the court on the evi dence was erroneous. We might have come to a different con clusion on the facts; but we see no ground for holding that it was erroneous in point of law. *Exceptions overruled.*